UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GRAFF/ROSS HOLDINGS LLP,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 07-796 (RJL) |
| | ) |
| **FEDERAL HOME LOAN MORTGAGE** | ) |
| **CORPORATION,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(September 24, 2012) [Dkt. ##34, 35, 54, 66, 82]

Plaintiff Graff/Ross Holdings, LLP ("Graff/Ross") brings this action against defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") for patent infringement, seeking, among other things, injunctive relief, compensatory damages, and attorneys' fees. *See* First Amended Complaint ("Am. Compl.") [Dkt. #37]. On April 29, 2009, Freddie Mac moved to dismiss the claims, arguing patent invalidity under 35 U.S.C. § 101. *See* Def.'s Mot. to Dismiss Graff/Ross' Claims of Infringement of the Two Asserted Patents ("Def.'s Mot. to Dismiss") [Dkt. #35]; Mem. in Supp. of Def.'s Mot. to Dismiss. ("Def.'s Mem. to Dismiss") [Dkt. #35] at 4. On January 12, 2010, I referred defendant's motion to dismiss to Magistrate Judge Alan Kay and asked for a Report and Recommendation. *See* Order, Jan. 12, 2010 [Dkt. #70]; *see also* Local Civil Rule 72.3 (detailing district court judge's authority to refer motions to a magistrate judge for report

and recommendation). On August 27, 2010, Magistrate Judge Kay recommended that defendant's motion to dismiss be granted. *See* Report & Recommendation ("Report" or "R&R") [Dkt. #82]. Not surprisingly, plaintiff objected to Magistrate Judge Kay's R&R. *See* Pl.'s Objections to R&R ("Pl.'s Obj.") [Dkt. #83].

Local Civil Rule 72.3(c) provides that the Court "shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made." LCvR 72.3(c). The Court "may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge." *Id.* Upon consideration of Magistrate Judge Kay's R&R, the parties' copious briefing, and recent case law, the Court hereby ADOPTS Judge Kay's recommendations [Dkt. #82], with the clarifications explained in this Memorandum Opinion, and GRANTS defendant's motion [Dkt. #35].

## BACKGROUND

### I. *Relevant Facts and Procedural History*

Magistrate Judge Kay eloquently and succinctly summarized the relevant facts of this case in his Report, R&R at 2-3; therefore, only a brief overview of the background and procedural history is necessary. On February 20, 2001, the United States Patent and Trademark Office ("USPTO") issued Patent No. 6,192,347 (the "'347 patent"), entitled "System and methods for computing to support decomposing property into separately valued components." Am. Compl. ¶ 10. On May 1, 2007, Graff/Ross, as the owner of

the '347 patent, filed a complaint, Compl. [Dkt. #1], which it subsequently amended on May 1, 2009, alleging that Freddie Mac infringed on "the '347 patent by using computer systems and methods to conduct electronic bond auctions of fixed income instruments."[1] *Id.* ¶ 12. Of the 128 claims in the '347 patent, plaintiff alleges infringement on two: Claims 101 and 102. R&R at 2. Claim 101 provides:

> A method for making a financial analysis output having a system-determined purchase price for at least one component from property in consummating a sale, the financial analysis output being made by steps including:
>
> > converting input data, representing at least one component from property, wherein the property is a fixed income asset, into input digital electrical signals representing the input data;
> >
> > providing a digital electrical computer system controlled by a processor electronically connected to receive said input digital electrical signals and electronically connected to an output means;
> >
> > controlling a digital electrical computer processor to manipulate electrical signals to compute a system-determined purchase price for at least one component from property in consummating a sale and corresponding purchase of the component; and
> >
> > generating the financial analysis output at said output means.

*Id.* Claim 102 is dependent on Claim 101 and provides:

> The method of claim 101, wherein the step of controlling includes controlling the digital electrical computer processor to manipulate the electrical signals generating the system-determined purchase price for corporate debt as the fixed-income asset.

---

[1] In its original complaint, Graff/Ross additionally alleged infringement by Freddie Mac on a second patent, Patent No. 7,152,044 (the "'044 patent"). Compl., May 1, 2007 [Dkt. #1] ¶ 11. Plaintiff subsequently withdrew its claims as to this patent, and entered into a covenant not to sue, "having the same effect as a dismissal with prejudice of its claims of infringement of the '044 patent." Covenant Not to Sue on U.S. Patent No. 7,152,044 & Dismissal Without Prejudice ("Covenant Not to Sue") [Dkt. #60-1]. *See also* Am. Compl.

*Id.* at 2-3. Freddie Mac moved to dismiss the claims as patent-ineligible subject matter under 35 U.S.C. § 101.[2] Def.'s Mem. to Dismiss at 4-5. After referral to Magistrate Judge Kay, this case was stayed pending the Supreme Court's decision in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), a decision which "could affect the proceedings of this case." Order, Feb. 26, 2010 [Dkt. #73]. The stay was lifted on July 8, 2010. Order, July 12, 2010 [Dkt. #74]. Following supplemental briefing from the parties, Judge Kay heard oral argument in this matter on August 10, 2010, and issued his R&R on August 27, 2010.

## II.  *The Report and Recommendation*

In his R&R, Judge Kay suggested converting defendant's motion to dismiss into a motion for summary judgment because the issue of patent validity is a "'defense' to the claim of infringement and [therefore,] is more appropriately disposed of on a motion for summary judgment."[3] R&R at 3. Although a patent is presumed valid under 35 U.S.C.

---

[2] Prior to filing its motion to dismiss, Freddie Mac filed counterclaims against Graff/Ross seeking declaratory judgment for non-infringement and patent-invalidity. *See* Answer, Affirmative Defenses & Countercls. of Def. [Dkt. #16]. As part of the Covenant Not to Sue, Freddie Mac withdrew its counterclaims as to the '044 patent. *See* Covenant Not to Sue at 1; Notice of Withdrawal of Def.'s Countercls. Directed to U.S. Patent No. 7,152,044 [Dkt. #61].

[3] This Court additionally referred the parties' request for claim construction to Judge Kay for Report and Recommendation. *See* Order, Jan. 12, 2010 [Dkt. #70]. Noting that a "court may forgo claim construction for summary judgment purposes if construing the claims is unnecessary to resolve the controversy," Judge Kay declined to interpret the disputed terms after finding it "unnecessary . . . before deciding the issue of validity." R&R at 4 (citing *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301 (Fed. Cir. 2001)). The Federal Circuit has recently stated "that claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

§ 282, Judge Kay found that defendant met its "burden to show by clear and convincing evidence that [C]laims 101 and 102 of the '347 patent are invalid under § 101," therefore, he recommended granting defendant's motion. *Id.* at 15.

In the time since this case was first referred to Judge Kay, the standard for determining patent-eligibility of a process changed. When the '347 patent was issued, the test for determining patent-eligibility of a process[4] was whether the abstract idea was "reduced to some type of practical application," that is, whether the process produced "a useful, concrete and tangible result." R&R at 6 (quoting *State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.*, 149 F.3d 1368, 1373 (Fed. Cir. 1998), *abrogated by In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008)). However, in 2008, the Federal Circuit decided *In re Bilski*, 545 F.3d 943, replacing this test with the "machine-or-transformation" test (the "MOT test"). *Id.* (citing *In re Bilski*, 545 F.3d at 954, 959-60). Under the MOT test, a process is patent-eligible if it either "(1) transform[s] a particular article into a different state or thing or (2) [is] tied to a particular machine or apparatus." *Id.* (quoting *In re Bilski*, 545 F.3d at 954) (internal quotation marks omitted). The *In re Bilski* decision was appealed to the Supreme Court, which issued its opinion on June 28, 2010, "reaffirm[ing] that abstract ideas are not patentable subject matter under § 101 and that this prohibition cannot be circumvented by limiting the claim to a particular technological environment or adding insignificant post-solution activity." *Id.* at 6-7 (citing *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010)). The Supreme Court rejected the MOT as the "exclusive test" for

---

[4] "The term 'process' means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b).

5

determining patent eligibility, but did note "that the MOT test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Id.* at 7 (quoting *Bilski*, 130 S. Ct. at 3227, 3231 (internal quotation marks omitted)).

Because of the Supreme Court's limited guidance, the USPTO issued the "Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of *Bilski v. Kappos*" ("Interim Guidance"). *Id.* at 10 (citing 75 Fed. Reg. 43,922 (July 27, 2010)). Relying on this guidance, *Bilski* and prior Supreme Court precedent, and Board of Patent Appeals and Interferences decisions, Judge Kay determined "that independent [C]laim 101 is not drawn to patentable subject matter because it recites nothing more than an abstract idea on a general purpose computer." *Id.* at 11. In particular, Judge Kay found that "the structural limitations of the claim"—limiting the claim to three machines: a digital electrical computer system, a digital electrical computer processor, and an output means—"do not impose meaningful limits on the process." *Id.* at 12 (citing Pl.'s Sur-Reply in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Surreply") [Dkt. #77] at 2-5). Despite, or perhaps in part because of, Graff/Ross' arguments that the process could be used on "analogous hardware," or "no machine at all," *id.* (citing Pl.'s Surreply at 4-5), Judge Kay found that the machines were not "integral to the process," and in fact, "appear[ed] to be no more than object[s] on which the method operates," *id.* (quoting Interim Guidance, 75 Fed. Reg. 43,925) (internal quotation marks omitted). Therefore, noting

that the claim would fail the machine prong of the MOT test,[5] and that it "is so abstract and sweeping . . . [that it could] be performed through any existing or future-devised machinery, or even without an apparatus," *id.* at 13 (quoting Interim Guidance, 75 Fed. Reg. 43,925), such that a patent on the claim would have the "practical effect" of preempting use of the process, *id.* at 9, 14, Judge Kay concluded that "Claim 101 is an unpatentable abstract idea," *id.* at 15. Furthermore, because Claim 101 was unpatentable, Judge Kay concluded that dependent Claim 102 was also invalid. *Id.* Following this conclusion, Judge Kay recommended granting defendant's motion. *Id.*

### III. Subsequent Case Law

Following the issuance of Judge Kay's R&R, the parties submitted eleven Notices of Supplemental Authority ("Notice of Supp'l Auth."), informing the Court of cases recently decided by the Supreme Court and Federal Circuit that provided additional guidance on the standard for determining patent-eligibility. *See* [Dkt. ##87, 94, 100, 102, 104, 107, 109, 111, 115, 116, 118]. Although the MOT test is still a "useful . . . tool" for determining patent-eligibility, *Bilski*, 130 S. Ct. at 3227, the courts have focused on

---

[5] Judge Kay specifically noted that "[t]he 'transformation prong' of the MOT test is inapplicable here, as Graff/Ross never argued that the asserted claims could meet this test." R&R at 13 n.6. To the extent that plaintiff argued the applicability of the transformation prong of the MOT test in light of the Federal Circuit's decision in *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323 (Fed. Cir. 2011), *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431 (2012), *see* Notice of Supp'l Auth. [Dkt. #104] at 2, the Court notes that the Supreme Court has since vacated and remanded *Ultramercial* to the Federal Circuit for "further consideration in light of *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*," 132 S. Ct. 1289 (2012), *see WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431 (2012).

refining the judicial limitation that abstract ideas cannot be patented.[6] The courts agree that "an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection," *Fort Props., Inc. v. Am. Master Lease, LLC*, 671 F.3d 1317, 1321 (Fed. Cir. 2012) (emphasis in original) (quoting *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); however, "the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity,'" *Bilski*, 130 S. Ct. at 3230 (quoting *Diehr*, 450 U.S. at 191-192). Thus, for "an otherwise unpatentable process" to be made patent-eligible by use of "a machine, the use of the machine 'must impose meaningful limits on the claim's scope.'" *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) (quoting *In re Bilski*, 545 F.3d at 961). "[T]he machine must play a significant part in permitting the claimed method to be performed," *id.* (quoting *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010)) (internal quotation marks omitted), and must be

---

[6] A patent may be granted to "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter," 35 U.S.C. § 101, unless the idea to be patented is a law of nature, a physical phenomenon, or an abstract idea, *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). The Federal Circuit has "not presume[d] to define 'abstract' beyond the recognition that this disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010). Further, "[u]nless the single most reasonable understanding is that a claim is directed to nothing more than a fundamental truth or disembodied concept, with no limitations in the claim attaching that idea to a specific application, it is inappropriate to hold that the claim is directed to a patent ineligible 'abstract idea' under 35 U.S.C. § 101." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 685 F.3d 1341, 1352 (Fed. Cir. 2012).

more than "incidental use . . . to perform [a] mental process," *id.*, because "the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers," *Fort Props.*, 671 F.3d at 1323 (quoting *CyberSource*, 654 F.3d at 1375).

## IV. Plaintiff's Objections

Not surprisingly, plaintiff "object[ed] to all sections of the Report and Recommendation." Pl.'s Objections to R&R ("Pl.'s Obj.") [Dkt. #83] at 1. Plaintiff contends that, contrary to Judge Kay's conclusion, its "Claims are patentable because they are directed to a particular, machine-implemented application of a general concept rather than the concept itself," *id.*, and that Judge Kay "misstates the law," *id.* at 15, 22, relies on "wrongly decided" cases, *id.* at 19-21, and his analysis is "erroneous," *id.* at 2, 5, 16-17. According to plaintiff, under Supreme Court precedent, the claim's structural limitations are meaningful limitations because "there are numerous other unpatented applications of the general principle embodied in Claim 101," and therefore, the claim is not "so abstract and sweeping as to pre-empt use of the underlying idea" in other applications. *Id.* at 15-16; *see also id.* at 10. Specifically, "the digital electrical computer processor is integrally involved in the claimed process itself," and, because the "patent requires that a machine implement the method . . . [it] satisfies the machine component of the MOT test." *Id.* at 17. Thus, according to plaintiff, the claim "recites a specific practical application of an idea, rather than the idea itself," and is therefore "a patentable 'process' under Section 101." *Id.* at 7. Plaintiff further contends that these arguments are

reinforced by the post-*Bilski* case law. *See, e.g.*, Notice of Supp'l Auth. [Dkt. #87] at 2-3 ("The patentability of Graff[/]Ross's claims is more clear than [plaintiff's because] . . . the Asserted Claims are explicitly tied to machines recited in the claims [and] . . . are directed to a specific application of digital electrical computer technology in the marketplace." (citing *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010)); Resp. to Notice of Supp'l Auth. [Dkt. #112] at 2 (distinguishing *Fort Props.*, 671 F.3d 1317, based on the fact that Graff/Ross' claims "make clear that controlling the digital electrical computer processor is significant to the performance of the method"); Notice of Supp'l Auth. [Dkt. #116] at 4 ("[T]he Magistrate Judge's conclusion . . . is based on the same flawed analysis rejected by the Federal Circuit in *CLS Bank*." (citing *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 685 F.3d 1341, 1253-54 (Fed. Cir. 2012)).[7]

## STANDARD OF REVIEW

The Court agrees with Magistrate Judge Kay that the issue of patent validity should be decided on summary judgment, and therefore, hereby converts defendant's

---

[7] In support of its arguments, plaintiff additionally informed the Court of the USPTO's Notice of Intent to Issue Ex Parte Re-Examination Certificate. Pl.'s Notice of Intent to Issue Ex Parte Re-Examination Certificate ("Pl.'s Notice of Re-Examination") [Dkt. #114]. Upon re-examination, the USPTO, which only reviewed for patentability based on prior art, *see* 35 U.S.C. §§ 301, 302, concluded that Claims 101 and 102 were patentable "in view of the . . . prior art considered in this proceeding." Ex. A to Pl.'s Notice of Re-Examination at 4. This determination has little bearing on this Court's review of patent-eligibility under 35 U.S.C. § 101. *See In re NTP, Inc.*, 654 F.3d 1268, 1275-76 (Fed. Cir. 2011) (citing 37 C.F.R. § 1.552) ("[Q]ualification as patentable subject matter under § 101 . . . may not be raised in reexamination proceedings.").

motion to dismiss into a motion for summary judgment.[8] Summary judgment is appropriate when, based on the record, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the burden, and the court will draw "all justifiable inferences" in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But, a party opposing summary judgment "may not rest upon the mere allegations . . . of his pleading"; instead he "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (quoting Red. R. Civ. P. 56(e)). A genuine issue exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## ANALYSIS

I agree with Judge Kay's conclusion that plaintiff's claims are not directed to patent-eligible subject matter, *see* R&R at 11, 15, and believe that the subsequent case law validates this conclusion. Therefore, I ADOPT Judge Kay's Report and Recommendation and GRANT defendant's motion for summary judgment.

As Judge Kay concluded, plaintiff's claims "recite[] nothing more than an abstract idea on a general purpose computer—*i.e.*, computing a price for the sale of a fixed income asset and generating a financial analysis output." R&R at 11. "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention,

---

[8] Both parties had "a reasonable opportunity to present all the material that is made pertinent to the motion." Fed. R. Civ. P. 12(d).

facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (citing *SiRF Tech.*, 601 F.3d at 1333). Like the computer limitations in *Bancorp Services*, the computer technology here "is employed only for its most basic function, the performance of repetitive calculations, and as such does not impose meaningful limits on the scope of those claims." *Bancorp*, 687 F.3d at 1278 (citing *Benson*, 409 U.S. at 67); *see also* R&R at 11-12. The claimed process is not "dependent upon the computer components required to perform it," *Bancorp*, 687 F.3d at 1279 (distinguishing *Research Corp.*, 627 F.3d 859, and citing *CyberSource*, 654 F.3d at 1376), as demonstrated by plaintiff's admission "that the claimed process could be carried out . . . without any machine" at all. Pl.'s Opp'n to Def.'s Mot. to Dismiss [Dkt. #42] at 9; *see also* Pl.'s Surreply at 4-5; R&R at 12.

Therefore, unlike the court in *CLS Bank*, this Court has no difficulty in "conclude[ing] that the computer limitations here do not play a significant part in the performance of the" process. *CLS Bank*, 685 F.3d at 1355. Instead, I agree with Magistrate Judge Kay, that the machine limitations in plaintiff's claim neither "impose[] a meaningful limit on the scope of the claim," nor "play[] a significant part in permitting the claimed method to be performed," but are merely "an obvious mechanism for permitting a solution to be achieved more quickly." *CLS Bank*, 685 F.3d at 1351 (quoting *SiRF Tech., Inc.*, 601 F.3d at 1333); *see also* R&R at 12-13. For these same reasons, as noted by Judge Kay, plaintiff's claims fail to satisfy the MOT test. R&R at 13; *see also CyberSource Corp.*, 654 F.3d at 1376 (finding claimed process patent-

ineligible because "merely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test").

Thus, having determined that the machine limitations were "no more than object[s] on which the method operates," R&R at 12 (citation and internal quotation marks omitted) (alteration in original), Judge Kay next analyzed the "field of use limitation," *id.* at 8, 13 (citing *Bilski*, 130 S. Ct. at 3231). Contrary to plaintiff's objections, Judge Kay's analysis is not "erroneous." Pl.'s Obj. at 2. "When the insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional features remain in the claims." *Bancorp Servs.*, 687 F.3d at 1279 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012)). As established by the Supreme Court in *Parker v. Flook*, 437 U.S. 584, 589-90 (1978), and reiterated by that Court in *Bilski*, "limiting an abstract idea to one field . . . d[oes] not make the concept patentable." *Bancorp*, 687 F.3d at 1275-76, 1280 (quoting *Bilski*, 130 S. Ct. at 3231). Just as the Court in *Bancorp* found that the claim limited "to use in the life insurance market" was unpatentable, *id.*, 687 F.3d at 1280, I agree with Judge Kay that limiting Graff/Ross' claim to fixed income assets does not provide meaningful limitations to "bestow patentability on the claim," *see* R&R at 8-9, 13.

## CONCLUSION

Thus, for all of the foregoing reasons, I find that Claims 101 and 102 of plaintiff's Patent No. 6,192,347 constitute patent-ineligible subject matter under 35 U.S.C. § 101, and are therefore invalid. Accordingly, I ADOPT the recommendations of Magistrate Judge Kay's R&R [Dkt. #82], with the clarifications set forth above, and GRANT defendant's motion for summary judgment [Dkt. #35]. Since the Claims at issue are invalid, any remaining claims and counterclaims pending in the suit are DISMISSED, and the Court further DISMISSES this action, in its entirety, with prejudice.[9] An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[9] Because the Court reaches this decision, it will not reach the merits of the parties' remaining pending motions, and therefore, denies them as moot. See Def.'s Mot. to Appoint a Patent Law Clerk [Dkt. #34]; Def.'s Mot. to Compel Complete Interrogatory Resps. & to Strike Pl.'s Untimely Objection [Dkt. #54]; Pl.'s Mot. to Compel Production of Relevant Fin. & Tech. Info. [Dkt. #66].